## JAMES S. UPTON *et al.*

*v.*

## SAMUEL CRAIG.

| 57  | 257  |
|-----|------|
| 125 | 444  |
| 57  | 257  |
| 89a | 1423 |
| 57  | 257  |
| 188 | 1559 |
| 188 | 1560 |

1. FRAUDULENT CONVEYANCES—*as against whom they may be binding.* It has been held that, however fraudulent a deed may be as against creditors of the grantor, it still may be binding as between the parties to the instrument. This principle is in no way changed by the chattel mortgage act of this State.

2. A purchased of B, as agent of C, a threshing machine belonging to the latter, and gave his three several promissory notes, secured by a mortgage thereon, and also on two horses, for the price, being $635, but in making the mortgage, for some purpose not explained, induced the agent to specify in the mortgage, another note payable to his principal for $200, which note, after holding a few months, the agent, his principal never at any time having had any knowledge of the matter, re-delivered to the purchaser. Upon objection that this fact avoided the mortgage, it was *held,* that while it might possibly have had that effect if a then subsisting creditor had been prejudiced by it, or it had operated so as to delay or hinder him in the collection of his debt, and as to such might be regarded as evidence of fraud, or the mortgage fraudulent *per se* and void, yet there being no subsisting creditors of the mortgagor at the time of the execution of the mortgage, other

17—57TH ILL.

than the mortgagee, the mortgage was valid and binding, not only as between the parties, but also as to third persons or subsequent creditors.

3. CHATTEL MORTGAGE—*possession—agency.* The mortgage gave to the mortgagee the right to take possession of the property on default of payment of any of the notes at maturity. A short time before the last note became due the mortgagor absconded, leaving the horses on a farm he had rented of D, whereupon the latter took the horses to his barn and went to B, the agent of the mortgagee, and told him he had the horses there for him and intended they should go to the mortgagee : *Held,* this was sufficient to constitute D the agent of B to keep the horses for him; at any rate, was sufficient to show that D was, under the circumstances, in the lawful possession of the property, and with the consent and approval of B, as agent of the mortgagee.

4. SAME—*seizure of property under attachment.* While the horses were so in the custody of D, he residing in Knox county, a subsequent creditor of the mortgagor having sued out, in Peoria county, a writ of attachment against his property and placed the same in the hands of a constable, the latter went to D's house and, in his absence, inquired of his boy whether the mortgagor left any property, and on being informed that he had, asked him if his father had any claim upon it. The boy replied in the negative. Thereupon the constable went to the barn, untied the horses and took them to Elmwood, in Peoria county, and there served the attachment upon them : *Held,* in an action of replevin by the mortgagee to recover possession of the horses, the constable in so taking possession of them could be regarded in no other light than as a trespasser, and could not be allowed to justify his act under the writ of attachment thus levied within his jurisdiction.

APPEAL from the Circuit Court of Peoria county ; the Hon. S. D. PUTERBAUGH, Judge, presiding.

Messrs. JOHNSON & HOPKINS, for the appellants.

Mr. THOMAS CRATTY, for the appellee.

Mr. JUSTICE BREESE delivered the opinion of the Court :

This was an action of replevin, in the Peoria Circuit Court, for a sorrel mare and one bay horse, brought by James S. Upton and company, against Samuel Craig, a constable, who justified under a writ of attachment, issued at the suit of one Tracy, against William H. Ely.

There was a trial by jury, and a verdict and judgment for the defendant, to reverse which plaintiffs appeal.

The only questions of importance in the case are, the validity of the chattel mortgage, under which the plaintiff claimed the property, and the legality of the levy of the writ of attachment.

The objection taken to the mortgage is, that a fictitious note was included in it.

It appears the mortgage was taken by one Coe, an agent of plaintiffs, manufacturers of threshing machines, living in the State of Michigan. Ely had purchased of Coe one of these machines, and executed three several notes for the price, being $635, and in making the mortgage he, for some purpose not clearly explained, induced the agent to specify in the mortgage another note, payable to the plaintiffs, for $200, and this without the knowledge of his principals, which note, after holding a few months, the agent, Coe, re-delivered to Ely, his principals never, at any time, having had any knowledge of the matter.

It is insisted, this fact avoids the mortgage. It might possibly have that effect, if a then subsisting creditor had been prejudiced by it, or it had operated so as to delay or hinder him in the collection of his debt. As to such, it might be regarded as evidence of fraud, or, under the authority of the case of *Wooley* v. *Frye*, 30 Ill. 158, fraudulent *per se* and void.

But in this case, there was no subsisting creditor of Ely at the time of the execution of the mortgage, other than these mortgagees, and it was held in *Ward* v. *Enders et al.* 29 Ill. 519, in regard to conveyances, that it was settled by a long course of decisions in this country and in Great Britain, that however fraudulent the deed may be as against creditors, it is valid and binding between the parties, and the chattel mortgage act in no way changes this principle.

The mortgage in this case gave to the mortgagees the right to take possession of the property on default of payment of any of the notes at maturity. Ely was a resident of Mason county, a renter of land from Milton Lawrence, and on

Tuesday the 2d of December, 1868, a short time before the last note became due, he absconded, leaving the horses in question, informing Lawrence they were under mortgage to Upton & Co. When he said to Lawrence he was going to take them away, Lawrence forbid him, and told him he would notify the parties holding the mortgage; Lawrence went to Elmwood, in Peoria county, the residence of Coe, agent of appellants, on the next Friday, and told Coe of the fact. The horses were then on the place Ely had rented and abandoned. Lawrence sent his son there when Ely left, who brought the horses to Lawrence's stable, where they remained about one week, until Craig took them. Lawrence told Coe he had taken the horses, and had them in his barn for him, and intended they should go to the mortgagee.

There is no proof other than this going to show that Lawrence was the agent of Coe to keep these horses for him, but we think it sufficient to establish an agency of that nature. At any rate, it is sufficient to show that Lawrence was, under the circumstances, in the lawful possession of the property, and with the knowledge and approval of Coe, the agent of mortgagees.

The remaining point is, the legality of the attachment levy.

This property was in Knox county; thither Craig and Kighttinger proceeded—went to Lawrence's house and asked his boy, or his wife, in Lawrence's absence, if Ely left any horses, and being told he did, Craig asked the boy if his father had any claim on them, and the boy replying in the negative, Craig and his assistant went to the barn, untied the horses and took them to Elmwood, in Peoria county, where Craig served the attachment upon them, at the suit of Tracy.

In so taking this property, the appellee can be regarded in no other light than as a trespasser, and can not be allowed to justify his act under the writ of attachment levied within his jurisdiction. It is vain to deny that Craig went into Knox county and took the horses by virtue of the fact that he had

this writ of attachment—took the property without the leave of the party in whose custody it was, and transported it to Peoria, and there levied upon it. No law of which we are apprised, justifies this conduct. It was only at the last term of this court, we set aside the proceedings against a debtor who had been decoyed from Wisconsin to Chicago, in order that process might be served on him there.

The mischief which would result from a sanction given by this court to such proceedings are inconceivable; such a trespasser as this appellee is shown to have been, can not challenge the right of appellants to the possession of this property under their mortgage, and, without going into a particular examination of the instructions given or refused, we will say, in general terms, that all such as disregard the principles herein stated are wrong. On another trial, the court will frame the instructions in conformity to this opinion.

The judgment of the circuit court is reversed and the cause remanded.

*Judgment reversed.*