32650. ROBINSON *v.* SMITH.

DECIDED OCTOBER 14, 1949.

*Morgan S. Canty,* for plaintiff in error.

*E. W. Fleming,* contra.

FELTON, J. In connection with the only ground of the affidavit of illegality to be considered, the plaintiff below testified: that he gave E. Y. Freeman some money with which to rent from the defendant the airplane described in the mortgage and fly it to the LaGrange airport; that his lawyer told him that he might have to buy the plane in when it was sold under the mortgage and that he should get some idea of what it was worth so he made arrangements for Freeman to bring it to the LaGrange airport so the mechanic could look at it; that he gave Freeman a note to give Mr. Brock at the airport and gave him the money to pay for the rental of the plane and carried him down to Robinson's airport in Chambers County, Alabama; that when the plane came to LaGrange the Sheriff of Troup County levied on it under the petitioner's mortgage foreclosure; that he had told the sheriff that if he would come out to the airport he

might have a chance to levy on the plane, but that the real reason he wanted it up there was so the mechanic there could give him an idea what it was worth; that he had not conspired with Freeman to take the plane away from Robinson or slip it off; and that he told Freeman to rent it from Robinson and bring it to LaGrange and gave him the money to pay the rental, both to LaGrange and for time to return. The defendant testified: that he owned the airplane levied on; that he ran an airport near Shawmut, in Chambers County, Alabama; that since he bought the plane he had kept it at his airport and used it in operating his business; that he had never kept it in Georgia and had no place in Georgia to keep it; that on February 21, 1948, Early Freeman came down to the airport and wanted to rent a plane; that Freeman said he wanted to fly to LaGrange; that witness told him all right and pointed out a plane he could use; that Freeman didn't want that one but wanted the plane described in the mortgage; that Freeman waited around and the witness told him that it was too late to try and go to LaGrange and back and that he would not have any plane that day; that a few minutes later he saw the mortgaged plane taking off; that he was informed that Freeman was flying it to LaGrange; that he did not authorize Freeman to take the plane to LaGrange; that Freeman did not pay him any rent for the use of the plane; that he did not authorize anybody to take it to LaGrange on the day Sheriff Hillyer seized it; that when Freeman got back he offered to pay rent on it but that he refused to accept it because he had not rented it to him and never did approve his taking the plane, and that he did not know he had it until he was in the air and he could not stop him. E. Y. Freeman testified in substance: that on September 20, 1948, Clifford Smith asked him if he would go to Robinson's airport and rent his Aeronca plane and fly it to LaGrange, saying that he wanted to have it checked over by Mr. Brock and for him to get a statement from Brock of the cost of putting it in first-class shape; that Freeman told him to have the plane in LaGrange between four and five p. m. the next day; that the next day Smith drove him down to Shawmut in Chambers County, Alabama, and gave him $5.25 to cover expenses; that Smith told him to be sure to get that particular plane; that the witness told Robinson he

needed a plane to meet a man in LaGrange and Robinson said he could have a plane but could not use the Aeronca because it was in use; that he waited around a while and Robinson told him he had better take another plane because he didn't want the witness getting back late; that soon after that George Nader drove the plane in for a landing, helped the witness gas the plane and the witness took off without saying any more to Robinson and flew it to LaGrange; that Robinson did not tell him he could not take the Aeronca; that as soon as he got to LaGrange he went to the airport office to see Mr. Brock and Sheriff Hillyer came up and asked if that was the plane Mr. Smith was looking for; that at that time Clifford Smith was on the field and said he would bring the witness home in his car. Sheriff Hillyer testified: that on the day the mortgage execution was turned over to him he received a call stating that the airplane involved was at the airport in LaGrange, or would be there, and that he could levy on it; that the caller did not say how he knew; that he learned that it was Smith's lawyer who called him; that he told the sheriff that he thought the plane would be up there, and that if he had a paper on it he could serve it if he wanted to.

The evidence shows without dispute that the plaintiff below procured the transfer of the airplane from Alabama to Georgia for the purpose of having it levied on under his mortgage foreclosure. While he stated that he had it brought to LaGrange to have an estimate made on the cost of repairs, he also stated that he gave his agent money with which to pay the rent on the plane on its trip to LaGrange and for the *time of return,* which shows that he did not contemplate that it would return. But even if it could be said that Smith in good faith had the plane brought to LaGrange for the purpose of having repair estimates made, he in fact procured the levy under circumstances equivalent to an original intention to bring it to LaGrange for levy. This constituted a breach of the bailment, if in fact there was one, and was fraudulent and unconscionable, and renders the levy void and unenforceable. . . "Jurisdiction of property obtained by illegal methods will not support an action in reference thereto." 14 Am. Jur., § 185, p. 382, n. 3; 37 A. L. R. 1255; 15 C. J., § 98. Code § 67-703 provides that mortgaged property may be levied on wherever it may be found but it does

not mean that the process afforded extraterritorial jurisdiction. The circumstances make the levy one analogous to one in Alabama, or to one where a sheriff brought the property from Alabama and then made a levy under the execution, which would be illegal and void. Upton *v.* Craig, 57 Ill. 257. There is no evidence of the mortgagor's wrongful removal of the airplane beyond the jurisdiction of the court and the facts strongly indicate, if they do not conclusively show, that the plane was housed in Alabama at the time of the execution of the mortgage and that the mortgagee knew it. The levy was void whether or not there was a conspiracy between the principal and agent in the procuring of the end to be accomplished. The result is the same—wrongful removal of property into Georgia for the purpose of obtaining jurisdiction in the mortgagee's own foreclosure proceedings. This conclusion renders it unnecessary to decide whether the judge reached the right conclusion on the other issue in the case. The court erred in overruling the motion for a new trial.

*Judgment reversed. Sutton, C. J., and Worrill, J., concur.*